**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 31 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BRIAN ROSALIO GUZMAN-NUNEZ,
AKA Brian Guzman, AKA Bryan Guzman,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.   19-70315

Agency No. A099-060-254

MEMORANDUM<sup>*</sup>

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 5, 2020
Submission Withdrawn March 16, 2020
Resubmitted July 31, 2020
Pasadena, California

Before:  NGUYEN, HURWITZ, and FRIEDLAND, Circuit Judges.

Brian Guzman-Nunez, a native and citizen of Belize, petitions for review of

an order of the Board of Immigration Appeals ("BIA") holding that the

immigration judge ("IJ") had jurisdiction over Guzman's removal proceedings and

affirming the IJ's decision denying Guzman asylum, withholding of removal under

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture ("CAT").  We deny the petition for review.

**1.**  We hold that the IJ had jurisdiction over Guzman's removal proceedings. Our decision in *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019), forecloses Guzman's argument that, under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the IJ lacked jurisdiction because his Notice to Appear ("NTA") did not contain the time and place information required by 8 U.S.C. § 1229(a).  And our decision in *Aguilar Fermin v. Barr*, 958 F.3d 887, 894-95, 895 n.4 (9th Cir. 2020), *petition for cert. filed* (U.S. July 16, 2020) (No. 20-53), forecloses any contention that the IJ lacked jurisdiction because Guzman's NTA did not contain the place information required by 8 C.F.R. §§ 1003.14(a), 1003.15(b)(6).

**2.**  We hold that the BIA did not abuse its discretion in concluding that Guzman was convicted of a particularly serious crime.  Guzman was convicted of possession of cocaine base for purposes of sale, which is presumptively a particularly serious crime.  *See Miguel-Miguel v. Gonzales*, 500 F.3d 941, 945-50 (9th Cir. 2007).  In concluding that Guzman failed to rebut this presumption, the BIA relied on the IJ's findings that "[t]wenty-one individual packets of rock cocaine is not '*de minimis* or inconsequential,'" and that Guzman "was encountered in an area frequented by members of the Hoover Crip gang" at a time when Guzman was a member of the gang.  Guzman emphasizes that the twenty-

2

one packets contained only a total of 6.49 grams of cocaine, but we are unable to "reweigh evidence to determine if the crime was indeed particularly serious." *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014) (quoting *Blandino-Medina v. Holder*, 712 F.3d 1338, 1343 (9th Cir. 2013)).  Guzman also argues that there is no basis for any connection between his "criminal activity" and "organized crime," but evidence in the record supports the IJ findings relied on by the BIA.  And, although Guzman further contends that he played only a "peripheral role" because there was no evidence he "intend[ed] to sell the substance," he was convicted of possessing cocaine for the purpose of selling it.

**3.**  We hold that substantial evidence supports the BIA's determination that Guzman failed to show that he would more likely than not be tortured if he were removed to Belize.

The record does not compel the conclusion that it is more likely than not Guzman would be tortured by Belize's Gang Suppression Unit ("GSU").  Guzman's expert, Nyasha Laing, testified that Guzman could "certainly" be targeted by the GSU and searched, harassed, detained, and/or surveilled.  But the treatment described by Laing does not rise to the level of torture.  *See Gui v. INS*, 280 F.3d 1217, 1229-30 (9th Cir. 2002) (concluding that "wiretapping, hit-and-run attempts to injure or kill [petitioner], detention, interrogation, and warrantless searches . . . did not amount to torture").  Guzman's documentary evidence does

3

recount incidents involving the GSU where its conduct might have risen to the level of torture. But the record does not compel the conclusion that this conduct is so widespread that it is more likely than not that Guzman will be subject to it, nor has he shown that there is any particular reason to think he would be a target of such conduct.

We also reject Guzman's argument that it is more likely than not he would be tortured because, upon arrival in Belize, he would be detained in facilities that lack accommodations for his disability, making him vulnerable to infection or injury. "[I]nhumane conditions . . . do not, in and of themselves, constitute torture"; it is only "the *intentional* denial of medical care as a form of punishment [that can] suffice to establish a CAT claim." *Cole v. Holder*, 659 F.3d 762, 773-74 (9th Cir. 2011). Guzman has failed to present evidence indicating that Belizean officials created "conditions for the specific purpose of inflicting suffering upon" detainees with disabilities. *Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir. 2008).

Finally, Guzman contends that it is more likely than not he would be tortured because he would probably be detained in prison, where he would be the victim of gang violence and subsequently be denied medical treatment for his injuries. Although Laing appeared to testify at one point that Belizean prison officials sometimes intentionally withhold medical treatment, she also testified at another point that she was "not clear [on] whether the prison ha[d] adequate

4

medical facilities and . . . is withholding them, or whether there aren't adequate medical facilities." Given Laing's inconsistent testimony, the record does not compel the conclusion that the Belizean government intentionally withholds medical care as punishment, such that Guzman could have a viable CAT claim. *See Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000) ("Under the substantial evidence standard of review, the court of appeals must affirm when it is possible to draw two inconsistent conclusions from the evidence.").[1]

**PETITION FOR REVIEW DENIED.**

---

[1] To the extent Guzman argues that his vulnerability to gang violence in prison is sufficient to show that he is entitled to CAT relief, and assuming he has not waived this contention, the record does not compel the conclusion that such violence is so routine that he would more likely than not be tortured. *Cf. Al-Saher v. INS*, 268 F.3d 1143, 1147 (9th Cir. 2001).